AMICA MUTUAL INSURANCE COMPANY *v.*
MICHAEL BARTON
(2052)

TESTO, DUPONT and BORDEN, Js.

Argued November 29, 1983—decision released April 24, 1984

Kenneth J. Laska, for the appellant (defendant).

Richard S. Bartlett, for the appellee (plaintiff).

DUPONT, J. This is an action seeking reimbursement for basic reparations benefits paid by the plaintiff, the insurer, to the defendant, the insured, for economic loss arising out of a collision between the defendant's car and a city of Waterbury dump truck.[1] The defendant counterclaimed seeking additional reparations benefits for work loss. The plaintiff moved for summary judgment on its complaint and on the defendant's counterclaim. No material facts are in issue and the court rendered judgment for the plaintiff on the complaint and on the counterclaim from which the defendant appeals.[2] The defendant claims that the trial court erred (1) in concluding that an insurer has a direct claim for

---

[1] The defendant and the city negotiated a settlement pursuant to which the defendant signed a general release and the city paid him $6000. Thereafter, the defendant refused to reimburse the plaintiff for $1449.82 of basic reparations benefits paid to him. The defendant claims the complaint sought a reimbursement of $1339.82 whereas the affidavit submitted with the plaintiff's motion for summary judgment claimed a payment of $1449.82. This is an immaterial variance between the pleadings and the evidence which should be disregarded. Schaller v. Roadside Inn, Inc., 154 Conn. 61, 64, 221 A.2d 263 (1966).

[2] This appeal was originally filed in the Appellate Session of the Superior Court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

reimbursement against a basic reparations benefits recipient under General Statutes § 38-325 (c)[3] after the recipient has effected a settlement with a tortfeasor and (2) in concluding that a settlement and release by a basic reparations beneficiary with a tortfeasor precludes the beneficiary from asserting future claims against the insurer.

The defendant argues that General Statutes § 38-325 (c) provides no direct cause of action by the insurer against the insured for reimbursement when the insured has recovered damages from a tortfeasor who was the owner or operator of a nonprivate passenger motor vehicle. The defendant claims that pursuant to the statute the insurer is only granted a right of subrogation against the tortfeasor to the extent that the insurer has paid basic reparations benefits to the insured.

The trial court held that the statute expressly provides a cause of action for subrogation by a no-fault insurer against some tortfeasors and impliedly grants a cause of action to the insurer against the insured for reimbursement of basic reparations benefits paid when the insured has recovered damages from a tortfeasor not within the ambit of the no-fault system. The court decided that the equitable nature of subrogation required an interpretation of General Statutes § 38-325 (c) which would allow the plaintiff to maintain its action.

---

[3] General Statutes § 38-325 (c) provides: "Whenever a person who receives basic reparations benefits for an injury has a right of recovery against any person or organization not described in subsection (b), an insurer that has paid such benefits to or for the injured person shall be subrogated to all such rights of recovery to the extent of its payments." General Statutes § 38-325 (b) entitles an insurer to a lien on its insured's recovery of damages whether by judgment or settlement, where the damages are paid by an owner, registrant, occupant or operator of a private passenger motor vehicle. It is conceded by the plaintiff that the defendant recovered damages from the owner of a nonprivate passenger motor vehicle.

The statutory scheme of General Statutes § 38-325 is enunciated in its three subsections. The heading of the entire section is "Subrogation," and the subsections define when subrogation is permitted and when it is not.

Subsection (a) is a general prohibition disallowing subrogation actions against tortfeasors who come within the no-fault motor vehicle insurance system. *Lumbermens Mutual Casualty Co.* v. *Hansen,* 37 Conn. Sup. 672, 675, 434 A.2d 372 (1981). Subsection (b) gives insurers a lien on the proceeds paid by those tortfeasors who come within the no-fault system to an insured who has received basic reparations benefits payments from the insurer. Subsection (c) grants insurers a right of subrogation against those tortfeasors who are not within the no-fault insurance system. Such tortfeasors include uninsured motorists; id.; and owners and operators of nonprivate passenger motor vehicles.

No section of the statute grants an express right to an insurer to bring suit against its insured for reimbursement for basic reparations benefits paid where the insured has collected damages from an owner or operator of a nonprivate passenger vehicle. The *lien* provided by subsection (b) of the statute arises after the insured has recovered from a tortfeasor and is a charge on those particular proceeds for the reimbursement to the insurer of sums previously paid as basic reparations benefits to the insured. See Ballantine's Law Dictionary (3d Ed.). The *subrogation* right provided by subsection (c) of the statute arises after the payment of basic reparations benefits by the insurer to its insured but before the insured has recovered from a tortfeasor and before the insured has exerted his right to recover. Subrogation is the "substitution of one person in the place of another with reference to a lawful claim or right against a third person." Ballentine's Law Dictionary (3d Ed.). The insurer has a right under sub-

section (c) to pursue that action which the insured may have had against a third person in order to collect that loss which the insurer has paid as a result of its insurance contract with the insured.

There have been decisional interpretations of General Statutes § 38-325 (b) and (c) but none decide the issue posed by the present case. It is clear that the insurer has a viable action, because of the subrogation rights granted by General Statutes § 38-325 (c) against an owner of a nonprivate passenger motor vehicle or against an uninsured motorist, to exert those rights not pursued by its insured; *Lumbermans Mutual Casualty Co.*, supra; and that the insurer may recover from the insured payments previously paid when the insured subsequently is paid for the same claim under the worker's compensation law. *Bobeck* v. *Public Service Mutual Ins. Co.*, 38 Conn. Sup. 318, 321–22, 445 A.2d 602 (1981). The *Bobeck* reimbursement, however, was made pursuant to General Statutes § 38-333 (c) which specifically provides that workers' compensation benefits shall be deducted from the amount otherwise payable as basic reparations benefits.

It has also been decided that the insurer has a lien under General Statutes § 38-325 (b) on amounts paid to an insured after the insurer has paid basic reparations benefits. *Hartford Accident & Indemnity Co.* v. *Holder*, 37 Conn. Sup. 723, 727, 436 A.2d 308 (1981). The latter case has dicta indicating that an insurer may also recover sums paid to an insured where the insured has recovered from an owner of a nonprivate passenger motor vehicle. That case, however, dealt with the constitutionality of General Statutes § 38-325 (b) and (c) and the court was not required to decide whether subsection (c) of the statute should be interpreted to allow a direct cause of action by the insurer against the insured for reimbursement for sums paid.

In the present case, the plaintiff was entitled to judgment as a matter of law, not because subsection (c) specifically provides the insurer with a remedy but because the plaintiff had a statutory right of subrogation under that subsection which the defendant destroyed when he entered into a general release of all of his claims arising out of the accident with the tortfeasor. Having obliterated the subrogation rights of the plaintiff, the defendant cannot, in equity, retain the benefit of what amounts to a duplicate payment. *Hartford Accident & Indemnity Co.* v. *Chung,* 37 Conn. Sup. 587, 590–91, 429 A.2d 158 (1981).

The plaintiff was obligated to make basic reparations benefits payments promptly as economic loss was incurred. General Statutes § 38-333 (a). It could not withhold them, while waiting to see if the defendant would be successful in obtaining payments from his tortfeasor.

The subrogation right of General Statutes § 38-325 (c) is given to insurers as a remedy in the event recalcitrant insureds do not pursue their own rights. The subrogation right of the statute does not preclude the insurer from seeking reimbursement from an insured who has pursued his rights and effected a settlement or judgment. To hold otherwise would be to enrich unjustly an insured by allowing him to retain a benefit at the expense of another. If the statute were to be interpreted as barring a direct action by the insurer against the insured for reimbursement, the consequences would be calamitous. Insurers would rush to sue in order to preserve their subrogation rights as provided in subsection (c), causing unnecessary litigation. Those tortfeasors outside the no-fault insurance system would have to defend suits which otherwise might be unnecessary and would never enter into settlements with an

insured, without a release from insurers as well, since to do so would subject them to potential additional claims of up to $5000.

In construing a statute, common sense is an important ingredient. The interpretation should avoid an irrational or inequitable result. *Kron* v. *Thelen,* 178 Conn. 189, 192, 423 A.2d 857 (1979). General Statutes § 38-325 (c) gives an insurer the right to stand legally in the place of its insured. When that right has been negated, the statute does not prevent the insurer from obtaining repayment from its insured to the extent the insured has recovered damages from the owner or operator of a nonprivate passenger motor vehicle.

The settlement by the insured with the tortfeasor prevents the insured from asserting future additional work loss claims against his insurer. The defendant executed a general release in favor of the city of Waterbury which released all of his claims against the city, including his claim for work loss. The defendant cannot, after his execution of a general release, now argue that his settlement may have been for pain and suffering only. It is unlikely that any tortfeasor would settle a claim for injury on such a basis since the release would then be a partial one, leaving the defendant with a right to seek additional damages, and allowing the defendant's insured to seek repayment, by way of subrogation, for the sums paid for the insured's economic loss.

Since there was no genuine issue as to any material fact, and since the plaintiff was entitled to judgment as a matter of law, the trial court properly rendered judgment for the plaintiff on both the complaint and the counterclaim.

There is no error.

In this opinion the other judges concurred.