AMY RATHBUN ET AL. *v.* HEALTH NET
OF THE NORTHEAST, INC.
(AC 32712)

DiPentima, C. J., and Robinson and Flynn, Js.

Argued November 16, 2011—officially released January 24, 2012

*Paul T. Edwards*, with whom, on the brief, were *Michael A. Stratton, Joel T. Faxon* and *Eric P. Smith*, for the appellants (plaintiffs).

*Linda L. Morkan*, with whom, on the brief, were *Theodore J. Tucci* and *Michael J. Kolosky*, for the appellee (defendant).

ROBINSON, J. The plaintiffs, Amy Rathbun and Tanequa Brayboy, appeal following the judgment of the trial court granting a motion for summary judgment in favor of the defendant, Health Net of the Northeast, Inc.[1] On appeal, the plaintiffs, who are Medicaid recipients, contend that the court erred in determining that the defendant could assert a claim against the plaintiffs to recover the costs of medical care owed to the plaintiffs by responsible third parties. We affirm the judgment of the trial court.

The following facts were stipulated to by the parties and accepted by the court. Under the Medicaid Act (Medicaid); 42 U.S.C. § 1396 et seq.; federal financial assistance is provided to states that choose to reimburse the costs of medical care to the economically disadvantaged. States may choose contractors to provide or to arrange for services under the state Medicaid plan, which is known as Medicaid managed care. The state of Connecticut participates in the Medicaid program and has authorized the department of social services (department) to administer the program within the state. The department is authorized to award "contracts for Medicaid managed care health plans" under General Statutes § 17b-28b.

The department contracted with the defendant directly and through its predecessors from 1995 through

[1] The trial court noted in its memorandum of decision and the defendant noted in footnote one of its appellate brief that the defendant does not issue or administer health benefits in Connecticut. Rather, Health Net of Connecticut, Inc., a former subsidiary of the defendant, provided benefits to the plaintiffs as per the terms of their respective health plans. This fact, however, was never properly asserted before the trial court or raised as an issue before this court on appeal. The parties stipulated at trial that the defendant "directly and through its predecessors . . . were parties to a contract regarding the administration of the Medicaid managed care program . . . ." As a result, we do not read the defendant's assertion that Health Net of Connecticut, Inc., provided benefits to the plaintiffs as asserting that the defendant is not the proper party to this action.

2008 regarding the administration of the Medicaid managed care program. The contract provided that "[t]he [d]epartment hereby assigns to [the defendant] all rights to third party recoveries from Medicare, health insurance, casualty insurance, workers' compensation, tortfeasors, or any other third parties who may be responsible for payment of medical costs for [the defendant's] members." The contract limited the defendant's right to recovery to the amount that the defendant paid toward the cost of its member's care. The contract required the defendant to make efforts to determine the legal liability of third parties for health care services provided to Medicaid enrollees, and to "pursue, collect, and retain any monies from third party payers for services to [the defendant's] members under this contract . . . ." The contract further provided that the defendant could assign "the right of recovery to [its] subcontractors and/or network providers."

The defendant contracted with The Rawlings Company, LLC (Rawlings), during all relevant times to this lawsuit to pursue recoveries for medical treatment provided to the defendant's members in instances where there was potential for third party liability. When Rawlings became aware that a member was injured by a third party, it typically notified the injured member and the third party that the defendant had a right to recover medical expenses paid on the member's behalf.

Rathbun was a member of the defendant's Medicaid managed care plan. The defendant paid $2982.93 for medical treatment affiliated with Rathbun's injuries stemming from a motor vehicle accident that occurred on July 24, 2006. Rathbun retained legal counsel to pursue potential tort claims against the driver of the other vehicle involved in the accident. Rawlings notified Rathbun's counsel, as well as the third party's insurer, that the defendant had a claim for repayment of the medical benefits it paid on Rathbun's behalf for injuries

sustained in the motor vehicle accident. Rathbun's counsel sent a check in the amount of $2982.93 to the defendant in satisfaction of the defendant's claim.

Kay' Anah Brayboy, the daughter of Tanequa Brayboy, was a member of the defendant's Medicaid managed care plan. On July 4, 2007, Kay' Anah was struck by a motor vehicle and subsequently died as a result of her injuries. The defendant paid $13,541.45 for medical treatment affiliated with Kay' Anah Brayboy's injuries from the accident. Tanequa Brayboy retained legal counsel to pursue possible tort claims against the driver of the motor vehicle that struck her daughter. Rawlings notified Tanequa Brayboy's counsel that the defendant had a claim for repayment for medical benefits paid on behalf of Kay' Anah Brayboy in connection with the motor vehicle accident. Brayboy subsequently retained new counsel, and Rawlings reissued its notice of claim letter to the attention of Brayboy's new counsel. To date, the defendant has not been reimbursed for the cost of medical care provided to Kay' Anah Brayboy.

The plaintiffs brought a putative class action against the defendant on November 26, 2008. The plaintiffs filed a second amended complaint, dated May 7, 2009, which alleged four counts, a putative class action, breach of the duty of good faith and fair dealing, conversion and a count seeking a declaratory judgment. The declaratory judgment count sought a declaration of the plaintiffs' rights and obligations to reimburse the defendant pursuant to Connecticut statutes, regulations and contract. Both parties filed motions for summary judgment on the declaratory judgment count on June 15, 2009. On August 21, 2009, the court granted the defendant's motion for summary judgment and denied the plaintiffs' motion for summary judgment.[2]

[2] Following the granting of the motion for summary judgment in favor of the defendant on the fourth count of the complaint, the plaintiffs withdrew counts one, two and three of the complaint on September 16, 2010. This appeal followed.

In its memorandum of decision, the court concluded that the department had assigned its statutory recovery right to the defendant. The court noted that under General Statutes § 17b-265 (a), the department has the right to be subrogated to any right of recovery that the Medicaid enrollee may have against a third party. Relying on § 17b-265 (b), which provides that the department may assign its right to subrogation to a designee or health care provider participating in the Medicaid program, the court concluded that the department properly assigned its statutory rights to the defendant. The court also concluded that, under Connecticut law, the defendant, as the assignee of the department, was not required to bring a separate action against the third party tortfeasor to recover the medical expenses expended on behalf of the Medicaid enrollee. Further, the court found that the defendant's reimbursement was limited to the amount of Medicaid funds expended by the defendant and identified as part of any settlement or judgment.

On appeal, the plaintiffs contend that the court erred in determining that the defendant could assert a claim against the plaintiffs to recover the costs of medical care received by the plaintiffs from responsible third parties. The plaintiffs argue that General Statutes § 52-225c prohibits the defendant from asserting such a claim against the plaintiffs unless "otherwise provided by law . . . ." The plaintiffs contend that the defendant cannot assert such claims because neither § 17b-265 nor General Statutes § 17b-94 are applicable to the circumstances of the case. We disagree.

We begin by setting forth the relevant standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008).

The plaintiffs' claim challenging the court's interpretation of a state statute is also subject to plenary review. *Brown & Brown, Inc.* v. *Blumenthal*, 297 Conn. 710, 721, 1 A.3d 21 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) Id., 722.

We begin our review with the language of the relevant statute. Section 17b-265 (a) provides in relevant part that "[i]n the case of such a recipient who is an enrollee in a care management organization under a Medicaid care management contract with the state or a legally liable relative of such an enrollee, the department shall be subrogated to any right of recovery or indemnification which the enrollee or legally liable relative has against such a private insurer or other third party for the medical costs incurred by the care management organization on behalf of an enrollee." Under § 17b-265 (a) then, the department is subrogated, to the extent of the amount paid for medical care on the behalf of an insured, to any rights that the Medicaid recipient may have to third party reimbursement. The department may assign this statutory right to subrogation under § 17b-265 (b) to "a designee or a health care provider participating in the Medicaid program and providing services to an applicant or recipient . . . ."[3] In addition, under § 17b-265 (b), as a condition of eligibility,

[3] General Statutes § 17b-265 (b) provides in relevant part: "An applicant or recipient or legally liable relative, by the act of the applicant's or recipient's receiving medical assistance, shall be deemed to have made a subrogation assignment and an assignment of claim for benefits to the department. The department shall inform an applicant of such assignments at the time of application. Any entitlements from a contractual agreement with an applicant or recipient, legally liable relative or a state or federal program for such medical services, not to exceed the amount expended by the department, shall be so assigned. Such entitlements shall be directly reimbursable to the department by third party payors. The [department] may assign its right to subrogation or its entitlement to benefits to a designee or a health care provider participating in the Medicaid program and providing services to an applicant or recipient, in order to assist the provider in obtaining payment for such services. In accordance with subsection (b) of section 38a-472, a provider that has received an assignment from the department shall notify the recipient's health insurer or other legally liable third party

applicants must assign to the department, up to the amount of medical assistance paid, their rights to seek payment from third parties.

In the present case, the department contracted with the defendant to administer the Medicaid managed care program. The department assigned to the defendant "all rights to third party recoveries . . . who may be responsible for payment of medical costs of [the defendant's] members." The contract further provided that the defendant was to make every reasonable effort to determine if there was third party liability for medical payments made to the defendant's members and to "pursue, collect, and retain any monies from third party payers for services to [the defendant's] members under this contract . . . ." Under the contract, the defendant could assign its right to recovery to subcontractors or network providers. Section 17b-265 (b) provides that the department may assign its right to subrogation to a designee or a health care provider participating in the Medicaid program. On the basis of those stipulated facts, we conclude that, the department, through its contract with the defendant, assigned its statutory right to subrogation under § 17b-265 (b) to the defendant.[4]

including, but not limited to, a self-insured plan, group health plan, as defined in Section 607 (1) of the Employee Retirement Income Security Act of 1974, service benefit plan, managed care organization, health care center, pharmacy benefit manager, dental benefit manager or other party that is, by statute, contract or agreement, legally responsible for payment of a claim for a health care item or service, of the assignment upon rendition of services to the applicant or recipient. Failure to so notify the health insurer or other legally liable third party shall render the provider ineligible for payment from the department. The provider shall notify the department of any request by the applicant or recipient or legally liable relative or representative of such applicant or recipient for billing information. This subsection shall not be construed to affect the right of an applicant or recipient to maintain an independent cause of action against such third party tortfeasor."

[4] The plaintiffs contend in their appellate brief that the defendant did not comply with the notice provisions set forth in §17b-265 (b), and therefore the department did not properly assign its right to subrogation to the defendant. The plaintiffs, however, did not assert this argument in their motion for summary judgment, nor did the trial court address this contention in

The primary issue on appeal is whether the defendant may assert its right to subrogation as a basis on which to recover money from the plaintiffs. The plaintiffs contend that § 17b-265 (a) provides the department with the right to seek reimbursement through subrogation directly from a third party only, and not from the Medicaid recipient. We disagree.

"In its simplest form, subrogation allows a party who has paid a debt to 'step into the shoes' of another (usually the debtee) to assume his or her legal rights against a third party to prevent that party's unjust enrichment. . . . In that way, an insurance company, for example, can be substituted for the insured in an action against a third party tortfeasor. The insured, having been paid by the insurer, in essence, transfers his rights against the tortfeasor to the insurer. The insurer, thus, can attempt to collect from the party that caused the loss to the extent expended by the insurer in satisfying the claim." (Citation omitted.) *Wasko* v. *Manella*, 74 Conn. App. 32, 35–36, 811 A.2d 727 (2002), rev'd on other grounds, 269 Conn. 527, 849 A.2d 777 (2004).

The plaintiffs rely on language found in *State* v. *Peters*, supra, 287 Conn. 82, to support their contention that § 17b-265 (a) requires that the department or its designee seek reimbursement through its right to subrogation only against the third party directly. In *Peters*,

its memorandum of decision. It appears, then, that the plaintiffs are attempting to assert this argument for the first time on appeal. "[B]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court. . . . [T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Citation omitted; internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 27–28, 901 A.2d 649 (2006). Further, because the plaintiffs did not file a transcript from oral argument on the cross motions for summary judgment, we cannot determine if this argument was raised at oral argument. The appellant is responsible for providing an adequate record for our review. *In re Elysa D.*, 116 Conn. App. 254, 266, 974 A.2d 834, cert. denied, 293 Conn. 936, 981 A.2d 1079 (2009). Therefore, we will not address this claim.

the issue before the court was whether federal law requires the department to pursue third parties directly for reimbursement of Medicaid funds, or whether the department could assert a lien against any settlement or judgment that the Medicaid recipient received. Id., 85–86. In reaching its conclusion that federal law did not preclude the department from asserting a lien against the Medicaid recipient's recovery, the court noted: "General Statutes (Sup. 2008) § 17b-265 requires that medicaid recipients in Connecticut, as a condition of eligibility, assign to the state the right to reimbursement from third parties for medical expenses. Under § 17b-265, the department of social services is subrogated to any right of recovery that a recipient has against a third party for reimbursement. Sections 17b-93 and 17b-94 provide that the state may assert a lien to effectuate the state's reimbursement of medicaid funds. Thus, to obtain reimbursement when a third party is liable for a recipient's medical expenses that the state has paid, the state may pursue those claims against the third party directly pursuant to the assignment and subrogation scheme or, alternatively, indirectly by placing a lien on personal injury judgments or settlements obtained by a medicaid recipient from a liable third party." Id., 92–93. The plaintiffs point to the court's language referencing the department's right to pursue claims against third parties directly pursuant to the statutory subrogation scheme found in § 17b-265 as support that such subrogation rights may only be asserted against third parties.

We do not read the language of the *Peters* decision as asserting that the department may only assert its right of subrogation against the third party directly. The issue before the court in *Peters* was whether the department could assert a lien against any settlement or judgment that the Medicaid recipient received, or alternatively whether it must pursue the third party

directly. In reaching its conclusion, the court simply noted that there are three statutes that govern the rights of the insured to seek reimbursement from responsible third parties. The court was not tasked with the responsibility of construing § 17b-265, as we are today. Therefore, we do not read the court's dicta concerning these statutes as asserting that under § 17b-265 (a), the department may only assert its right to subrogation against the third party directly.

When an insurer has the right of subrogation, it can stand in the shoes of the insured in order to recover the costs of payments made to the insured. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 367, 672 A.2d 939 (1996). In order to assert its subrogation rights, an insurer, therefore, could intervene in an action between the insured and the third party, or bring direct suit against the third party. If an insured secures a settlement or judgment from a third party, however, the insurer's right to be reimbursed under its right to subrogation does not end. Rather, the insurer may be reimbursed by the insured under its right to subrogation for the payments they provided. *Amica Mutual Ins. Co.* v. *Barton*, 1 Conn. App. 569, 574, 474 A.2d 104 (1984).

In *Amica Mutual Ins. Co.* v. *Barton*, supra, 1 Conn. App. 570, the plaintiff insurance company sought reimbursement from its insured for benefits it paid when the insured settled with the responsible third party. The insurer was entitled to subrogation under state statute. The insured, however, argued that the statute only granted the insurer a right of subrogation against the tortfeasor and did not provide for a direct cause of action against the insured. Id., 571. This court noted that "[n]o section of the statute grants an express right to an insurer to bring suit against its insured for reimbursement for basic reparations benefits paid where the insured has collected damages from [the third party tortfeasor]." Id., 572. This court concluded, however,

that "the plaintiff had a statutory right of subrogation . . . which the defendant destroyed when he entered into a general release of all of his claims . . . with the tortfeasor. Having obliterated the subrogation rights of the plaintiff, the defendant cannot, in equity, retain the benefit of what amounts to a duplicate payment. . . . The subrogation right . . . is given to insurers as a remedy in the event recalcitrant insureds do not pursue their own rights. The subrogation right of the statute does not preclude the insurer from seeking reimbursement from an insured who has pursued his rights and effected a settlement or judgment. To hold otherwise would be to enrich unjustly an insured by allowing him to retain a benefit at the expense of another. If the statute were to be interpreted as barring a direct action by the insurer against the insured for reimbursement, the consequences would be calamitous." (Citations omitted.) Id., 574.

As was the case in *Barton*, in the present case, the defendant had a statutory right to subrogation, which the plaintiffs affected when they settled or secured judgment with the responsible third parties. Like the statute in *Barton*, the statute here does not reference the department's express right to recover from the insured directly under its right to subrogation. Simply because the statute does not reference a direct right to be reimbursed from funds collected by the insured, however, does not mean that such right does not exist. The statute here specifically provides that the Medicaid enrollee must make a subrogation assignment to the department or its designee. It would thus be inequitable to allow the insured to bypass the dictates of the statute simply by securing a settlement or judgment and ultimately recovering a double payment. As such, an insurer who possesses a subrogation right, such as the defendant in this case, has the right to seek reimbursement from the insured if the insured has effected a settlement

or judgment with a responsible third party. See also *Sargeant* v. *Local 478 Health Benefits & Ins. Fund*, 746 F. Sup. 241, 245–46 (D. Conn. 1990) ("The proposition is well established that an insurer's right to subrogation . . . includes a claim against any judgment secured by the insured against the party at fault for the amount paid by the insurer in satisfaction of the insured's damages claim under the policy. . . . This benefactor's right to recovery against the beneficiary has been recognized in contract, based on the terms of the agreement . . . and in equity, based on theories prohibiting unjust enrichment . . . . In Connecticut courts, an insurer which has paid a claim for which a third person has been held responsible can seek reimbursement out of the funds received by the insured in satisfaction of his/her claim against the third person and no cases have qualified such rights." [Citations omitted; internal quotation marks omitted.]). Accordingly, the court properly granted the defendant's motion for summary judgment on the ground that the defendant could recover from the plaintiffs under § 17b-265.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The plaintiffs' contention on appeal is that there is no statutory authority that provides the defendant with the right to recover the costs of medical care paid to the plaintiff. In addition to its argument that the defendant may not assert its right to subrogation against the plaintiffs, the plaintiffs also maintain that the defendant does not have the right to assert a lien under § 17b-94 because the statute does not provide the state with authority to

assign such right. Because we conclude that the court properly granted the defendant's motion under § 17b-265, we need not address this contention.