******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMY RATHBUN ET AL. *v.* HEALTH NET
OF THE NORTHEAST, INC.
(SC 18928)

Palmer, Zarella, McDonald, Espinosa and Vertefeuille, Js.

*Argued September 25, 2014—officially released March 10, 2015*

*Eric P. Smith*, with whom, on the brief, were *John P. D'Ambrosio* and *Joel T. Faxon*, for the appellants (plaintiffs).

*Linda L. Morkan*, with whom, on the brief, was *Theodore J. Tucci*, for the appellee (defendant).

*Opinion*

PALMER, J. The issue that we must resolve in this certified appeal is whether General Statutes § 17b-265 (a),[1] which provides in relevant part that the Department of Social Services (department) "shall be subrogated to any right of recovery . . . that an applicant or recipient of medical assistance . . . has against an insurer or other legally liable third party . . . that is . . . legally responsible for payment of a claim for a health care item or service," authorizes the department or its designated assignee to seek reimbursement from a Medicaid recipient for medical costs that the recipient has recovered from a liable third party. After the named plaintiff, Amy Rathbun, and the daughter of the plaintiff Tanequa Brayboy were injured in separate motor vehicle accidents, the defendant, Health Net of the Northeast, Inc. (Health Net), which administered the Medicaid program for the state of Connecticut and was the designated assignee of the department's rights under § 17b-265, paid for medical care that Brayboy's daughter and Rathbun received as a result of their injuries. Both plaintiffs brought civil actions against the persons who had caused the injuries. Thereafter, pursuant to § 17b-265, Health Net, acting through its agent, The Rawlings Company, LLC (Rawlings), sought to recover from the plaintiffs amounts that the plaintiffs had recovered from the respective tortfeasors as reimbursement for the payments made by Health Net for the medical care provided to Brayboy's daughter and Rathbun. The plaintiffs then brought this action seeking, among other things, a declaratory judgment that § 17b-265 (a) does not authorize Health Net to seek reimbursement from them but requires it to seek recovery directly from the liable third parties. Both the plaintiffs and Health Net filed motions for summary judgment as to the declaratory judgment count, and the trial court granted Health Net's motion and denied the plaintiffs' motion. After the plaintiffs withdrew the remaining counts of their complaint, and the trial court rendered judgment for Health Net, the plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. *Rathbun* v. *Health Net of the Northeast, Inc.*, 133 Conn. App. 202, 215, 35 A.3d 320 (2012). We then granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that . . . § 17b-265 permitted [Health Net] to bring an action against the plaintiffs to recover its collateral source payments?" *Rathbun* v. *Health Net of the Northeast, Inc.*, 304 Conn. 905, 38 A.3d 1201 (2012). We answer the certified question in the affirmative and, therefore, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following procedural history and facts, which were stipulated to by the parties and accepted by the trial court. "Under the Medicaid Act (Medicaid); 42 U.S.C. § 1396

et seq. [2012]; federal financial assistance is provided to states that choose to reimburse the costs of medical care to the economically disadvantaged. States may choose contractors to provide or to arrange for services under the state Medicaid plan, which is known as Medicaid managed care. The state of Connecticut participates in the Medicaid program and has authorized the department . . . to administer the program within the state. The department is authorized to award 'contracts for Medicaid managed care health plans' under General Statutes § 17b-28b.

"The department contracted with [Health Net] directly and through its predecessors from 1995 through 2008 regarding the administration of the Medicaid managed care program. The contract provided that '[t]he [d]epartment hereby assigns to [Health Net] all rights to third party recoveries from Medicare, health insurance, casualty insurance, workers' compensation, tortfeasors, or any other third parties who may be responsible for payment of medical costs for [Health Net's] members.' The contract limited [Health Net's] right to recovery to the amount that [it] paid toward the cost of its member's care. The contract required [Health Net] to make efforts to determine the legal liability of third parties for health care services provided to Medicaid enrollees, and to 'pursue, collect, and retain any [money] from [third-party] payers for services to [Health Net's] members under this contract . . . .' The contract further provided that [Health Net] could assign 'the right of recovery to [its] subcontractors and/or network providers.'

"[Health Net] contracted with [Rawlings] . . . to pursue recoveries for medical treatment provided to [Health Net's] members in instances [in which] there was potential for [third-party] liability. When Rawlings became aware that a member was injured by a third party, it typically notified the injured member and the third party that [Health Net] had a right to recover medical expenses paid on the member's behalf.

"Rathbun was a member of [Health Net's] Medicaid managed care plan. [Health Net] paid $2982.93 for medical treatment [rendered in connection with] Rathbun's injuries stemming from a motor vehicle accident that occurred on July 24, 2006. Rathbun retained legal counsel to pursue potential tort claims against the driver of the other vehicle involved in the accident. Rawlings notified Rathbun's counsel, as well as the [driver's] insurer, that [Health Net] had a claim for repayment of the medical benefits it [had] paid on Rathbun's behalf for injuries sustained in the motor vehicle accident. Rathbun's counsel sent a check in the amount of $2982.93 to [Health Net] in satisfaction of [Health Net's] claim.

"Kay' Anah Brayboy, the daughter of Tanequa Brayboy, was a member of [Health Net's] Medicaid managed

care plan. On July 4, 2007, Kay' Anah [Brayboy] was struck by a motor vehicle and subsequently died as a result of her injuries. [Health Net] paid $13,541.45 for medical treatment [rendered in connection with] Kay' Anah Brayboy's injuries from the accident. Tanequa Brayboy retained legal counsel to pursue possible tort claims against the driver of the motor vehicle that struck her daughter. Rawlings notified Tanequa Brayboy's counsel that [Health Net] had a claim for repayment for medical benefits paid on behalf of Kay' Anah Brayboy in connection with the motor vehicle accident. [Tanequa] Brayboy subsequently retained new counsel, and Rawlings reissued its notice of claim letter to the attention of [Tanequa] Brayboy's new counsel. To date, [Health Net] has not been reimbursed for the cost of medical care provided to Kay' Anah Brayboy.

"The plaintiffs brought a putative class action against [Health Net] on November 26, 2008. The plaintiffs filed a second amended complaint, dated May 7, 2009, which [included] four counts, a putative class action, breach of the duty of good faith and fair dealing, conversion and a count seeking a declaratory judgment. The declaratory judgment count sought a declaration of the plaintiffs' rights and obligations to reimburse [Health Net] pursuant to Connecticut statutes, regulations and contract. Both [the plaintiffs and Health Net] filed motions for summary judgment on the declaratory judgment count on June 15, 2009. On August 21, 2009, the court granted [Health Net's] motion for summary judgment and denied the plaintiffs' motion for summary judgment.[2]

"In its memorandum of decision, the [trial] court concluded that the department had assigned its statutory recovery right to [Health Net]. The court noted that under . . . § 17b-265 (a), the department has the right to be subrogated to any right of recovery that the Medicaid [recipient] may have against a third party. Relying on § 17b-265 (b), which provides that the department may assign its right to subrogation to a designee or health care provider participating in the Medicaid program, the court concluded that the department properly assigned its statutory rights to [Health Net]. The court also concluded that, under Connecticut law, [Health Net], as the assignee of the department, was not required to bring a separate action against [a third-party] tortfeasor to recover the medical expenses expended on behalf of the Medicaid [recipient]. Further, the court found that [Health Net's right to] reimbursement was limited to the amount of Medicaid funds expended by [Health Net] and identified as part of any settlement or judgment." (Footnote altered.) *Rathbun* v. *Health Net of the Northeast, Inc.*, supra, 133 Conn. App. 204–207.

The plaintiffs then appealed to the Appellate Court, claiming that Health Net was prohibited by General

Statutes § 52-225c, the antisubrogation statute, from recovering from the plaintiffs the costs of medical care that the plaintiffs had recovered from responsible third parties. Section 52-225c provides in relevant part: "Unless otherwise provided by law, no insurer or any other person providing collateral source benefits as defined in section 52-225b shall be entitled to recover the amount of any such benefits from the defendant or any other person or entity as a result of any claim or action for damages for personal injury or wrongful death regardless of whether such claim or action is resolved by settlement or judgment. . . ." Specifically, the plaintiffs claimed that Health Net's recovery of these amounts was not "otherwise provided by law" within the meaning of § 52-225c because § 17b-265 allowed Health Net to recover only directly from the liable third parties, not from them, and the only other provision that allows a lien to be placed on the proceeds of a legal action brought by a Medicaid recipient, General Statutes § 17b-94 (a),[3] confers lien rights only on the state. See *Rathbun* v. *Health Net of the Northeast, Inc.*, supra, 133 Conn. App. 207. The Appellate Court concluded that the state had assigned the subrogation rights conferred by § 17b-265 (a) to Health Net pursuant to § 17b-265 (b); id., 210; and that those subrogation rights included the right to seek reimbursement directly from the plaintiffs for amounts that they had received for medical costs from responsible third parties. See id., 213–14. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 215.

On appeal to this court, the plaintiffs renew their claim that the right of subrogation created by § 17b-265 (a) and assigned to Health Net pursuant to § 17b-265 (b) does not include the right to seek reimbursement from them for amounts that they had recovered from liable third parties but includes only the right to recover directly from the liable third parties. They contend that allowing Health Net to seek reimbursement from them pursuant to § 17b-265 (a) effectively converts the right to subrogation created by that provision into a lien right, in contravention of the intent of the legislature to confer lien rights exclusively on the state and to limit the amount of the lien to no greater than 50 percent of the amount recovered by the Medicaid recipient from the responsible third party, less the costs of the action, as provided in § 17b-94 (a). We are not persuaded by the plaintiffs' claim.

Our review of the trial court's decision to grant Health Net's motion for summary judgment is plenary. See, e.g., *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010). Similarly, whether § 17b-265 authorizes an assignee of the department's statutory subrogation right to seek reimbursement for amounts paid to a Medicaid recipient by a responsible third party is a question of statutory interpretation over which we also exercise plenary

review. See, e.g., id. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Footnote omitted; internal quotation marks omitted.) *Picco* v. *Voluntown*, 295 Conn. 141, 147, 989 A.2d 593 (2010).

Before addressing the specific language of § 17b-265, it is helpful to provide an overview of the relevant legal landscape. "The federal [M]edicaid statutes place a priority on state reimbursement of [M]edicaid funds and require that participating states have a recovery policy to effectuate such reimbursement. For states that elect to participate in the [M]edicaid program, title 42 of the United States Code, § 1396a (a) (25) (A), mandates that the state's plan for medical assistance must provide . . . that the [s]tate or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan . . . . [42 U.S.C. § 1396a (a) (25) (A) (2012).] Moreover, in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the [s]tate can reasonably expect to recover exceeds the costs of such recovery, the [s]tate or local agency *will seek reimbursement* for such assistance to the extent of such legal liability . . . . 42 U.S.C. § 1396a (a) (25) (B) [2012]. To facilitate reimbursement, participating states also are required to adopt laws under which, to the extent that payment has been made under the [s]tate plan for medical assistance for health care items or services furnished to an individual, the [s]tate is considered to have acquired the rights of such individual to payment by any other party for such health care items or services . . . . 42 U.S.C. § 1396a (a) (25) (H) [2012]. Furthermore, [with respect to] reimbursement, title 42 of the United States Code, § 1396k (a), sets forth conditions that a state [M]edicaid participation plan must meet, which include the requirement

that [M]edicaid recipients . . . assign to the state any rights [that] they may have to payment of medical care from third parties: For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the [s]tate plan approved under this subchapter, a [s]tate plan for medical assistance shall . . . (1) provide that, as a condition of eligibility for medical assistance under the [s]tate plan to an individual . . . the individual is required . . . (A) to assign the [s]tate any rights . . . of the individual . . . to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party; (B) to cooperate with the [s]tate . . . [ii] in obtaining support and payments (described in subparagraph [A]) for himself . . . and (C) to cooperate with the [s]tate in identifying, and providing information to assist the [s]tate in pursuing, any third party who may be liable to pay for care and services available under the plan . . . . [42 U.S.C. § 1396k (a) (1) (A), (B) (ii) and (C) (2012).] Section 1396k further provides: Such part of any amount collected by the [s]tate under an assignment made under the provisions of this section shall be retained by the [s]tate as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the [f]ederal [g]overnment to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual. 42 U.S.C. § 1396k (b) [2012]; see also 42 C.F.R. §§ 433.145 and 433.146 [2014].

"The state . . . has elected to participate in the [M]edicaid program, and, therefore, is obligated to comply with federal requirements. See General Statutes §§ 17b-2 (6) and 17b-260; see also *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, 547 U.S. 268, 275–78, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006); *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981). Accordingly, the legislature has adopted a statutory scheme that provides three ways for the state to seek reimbursement of [M]edicaid funds paid to recipients, namely, by an assignment of rights, a right of subrogation and a lien. [Section] 17b-265 [b] requires that [M]edicaid recipients in Connecticut, as a condition of eligibility, assign to the state the right to reimbursement from third parties for medical expenses. Under § 17b-265 [a], the department . . . is subrogated to any right of recovery that a recipient has against a third party for reimbursement. [General Statutes §§] 17b-93 and 17b-94 provide that the state may assert a lien to effectuate the state's reimbursement of [M]edicaid funds. . . .

"The federal statutes illustrate that Congress has mandated that [M]edicaid be a payer of last resort . . .

and that the state is required to seek reimbursement of [M]edicaid funds. The language of the relevant federal [M]edicaid statutes, however, does not dictate the method that states must employ to effectuate that goal." (Citation omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *State* v. *Peters*, 287 Conn. 82, 89–93, 946 A.2d 1231 (2008).

With this background in mind, we turn to the text of § 17b-265. The statute provides in relevant part: "In accordance with 42 [U.S.C. §] 1396k, the [d]epartment . . . shall be subrogated to any right of recovery or indemnification that an applicant or recipient of medical assistance or any legally liable relative of such applicant or recipient has against an insurer or other legally liable third party . . . for the cost of all health care items or services furnished to the applicant or recipient, including, but not limited to, hospitalization, pharmaceutical services, physician services, nursing services, behavioral health services, long-term care services and other medical services, not to exceed the amount expended by the department for such care and treatment of the applicant or recipient. . . ." General Statutes § 17b-265 (a). Because the plaintiffs do not dispute that the department has assigned all of its rights under § 17b-265 (a) to Health Net pursuant to § 17b-265 (b), the issue that we must address is the scope of the department's rights under the statute.[4]

The plaintiffs contend that the language of § 17b-265 (a) providing that the department "shall be subrogated to any right of recovery . . . that [a] . . . recipient of medical assistance . . . has against an insurer or other legally liable third party" clearly and unambiguously grants to the department *only* the right to step into the recipient's shoes and to initiate proceedings against persons *other than* the recipient. Although we agree with the plaintiffs that the statute clearly and unambiguously confers *at least* this right, we do not agree that the statute clearly and unambiguously *limits* the department's rights in this way. Rather, it is unclear whether the department's statutory right to subrogation against a legally liable third party under § 17b-265 (a) includes the right to seek reimbursement of amounts paid by a legally liable third party to the Medicaid recipient, which, as we discuss subsequently in this opinion, is included in the common-law right of subrogation. We therefore look to extratextual sources that are relevant to our resolution of the issue.

We first consider common-law principles governing the doctrine of subrogation. "In its simplest form, subrogation allows a party who has paid a debt to step into the shoes of another (usually the debtee) to assume his or her legal rights against a third party to prevent that party's unjust enrichment. . . . The common-law doctrine of legal or equitable subrogation therefore enables an insurance company that has made a payment to its

insured to substitute itself for the insured and to proceed against the responsible third party." (Citation omitted; internal quotation marks omitted.) *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, 309 Conn. 449, 455, 72 A.3d 36 (2013).

"The object of [legal or equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode [that] equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. . . . Subrogation further promotes equity by preventing an insured from receiving more than full indemnification as a result of recovering from both the wrongdoer and the insurer for the same loss, which would unjustly enrich the insured." (Citation omitted; internal quotation marks omitted.) Id., 456.

Moreover, "[it] is well established that an insurer's [common-law] right to subrogation . . . includes a claim against any judgment secured by the insured against the party at fault for the amount paid by the insurer in satisfaction of the insured's damage claim under the policy." *Automobile Ins. Co.* v. *Conlon*, 153 Conn. 415, 419, 216 A.2d 828 (1966); accord *Sargeant* v. *International Union of Operating Engineers, Local Union 478 Health Benefits & Ins. Fund*, 746 F. Supp. 241, 245–56 (D. Conn. 1990); see also *Continental Ins. Co.* v. *Connecticut Natural Gas Corp.*, 5 Conn. App. 53, 59, 497 A.2d 54 (1985) ("[t]he principle that an insurer [that] has paid a claim for property destroyed through the fault of a third person may, in certain circumstances, be reimbursed out of the funds received by the insured in satisfaction of his claim against the third person, is generally recognized"); *Amica Mutual Ins. Co.* v. *Barton*, 1 Conn. App. 569, 574, 474 A.2d 104 (1984) ("The subrogation right [conferred by General Statutes (Rev. to 1983) § 38-325 (c)] does not preclude the insurer from seeking reimbursement from an insured who has pursued his rights and effected a settlement or judgment. To hold otherwise would be to enrich unjustly an insured by allowing him to retain a benefit at the expense of another."); 22 E. Holmes, Appleman on Insurance (2d Ed. 2003) § 141.3, p. 433 (if insured recovers insurer's subrogation from liable third party, it must reimburse insurer); 16 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) §§ 222:81 and 222:83, pp. 222-120, 222-122 through 222-123 (discussing distinction between insurer's rights to subrogation and reimbursement from insured and noting that some jurisdictions treat them as same right); 16 L. Russ & T. Segalla, supra, § 222:83, p. 222-123 ("if an insurer paid an insured the full amount of his or her claim and the insured then recovers from a third party, the insured must reimburse the insurer any amount recovered in excess of his or her own claim, as the right to subrogation . . . is designed to compel discharge of obligation by one who in equity should bear the loss"). These

authorities provide strong support for the conclusion that the right to subrogation conferred on the department by § 17b-265 (a) includes the right to seek reimbursement from a Medicaid recipient who has recovered damages for medical costs from a third party.

This conclusion also is supported by the legislative policy underlying § 17b-265. As we have explained, in order to conserve the public fisc, the state Medicaid program is intended to be a payer of last resort. *State* v. *Peters*, supra, 287 Conn. 93. To this end, Congress has made it unmistakably clear that, to the extent possible, states should not use Medicaid funds to pay for a recipient's medical services if a third party has been deemed responsible for those costs, and the state must seek reimbursement of amounts for which the third party is liable to the full extent of such liability.[5] See 42 U.S.C. § 1396a (a) (25) (A) (2012) (state's plan for medical assistance must provide "that the [s]tate or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan"); 42 U.S.C. § 1396a (a) (25) (B) (2012) ("in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual . . . the [s]tate or local agency will seek reimbursement for such assistance to the extent of such legal liability"); see also *State* v. *Peters*, supra, 89 (in interest of maximizing state reimbursement of Medicaid funds, federal Medicaid statutes require participating states to have recovery policy to effectuate such reimbursement). Although the United States Supreme Court never has directly addressed a claim that a participating state may not seek reimbursement directly from the Medicaid recipient of amounts that the recipient has recovered from a third party, it has assumed that "a [s]tate can fulfill its obligations under the federal third-party liability provisions by requiring an 'assignment' of part of, or placing a lien on, the settlement that *a Medicaid recipient procures on her own.*" (Emphasis added.) *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 280 n.9; see also *State* v. *Peters*, supra, 94–95 ("[The] language [in the legislative history of the federal Medicaid statutes] clearly permits states to pursue reimbursement directly from a third party, but it does not logically follow, from its silence, that it precludes states from seeking reimbursement by other methods . . . . Instead, we read this language to require that the state . . . obtain reimbursement from a liable third party, regardless of method, and [that it] do so directly from a third party *unless a beneficiary already has collected from that party* . . . ." [Emphasis added.]).[6]

We recognize that *Ahlborn* and *Peters* involved state statutes that, unlike § 17b-265, expressly conferred the right to place a lien on amounts recovered by a Medicaid recipient from a liable third party and did not involve

a statutory right to subrogation. See *Arkansas Dept. of Health & Human Services* v. *Ahlburn*, supra, 547 U.S. 278 (Arkansas statute, Ark. Code Ann. § 20-77-307 [c] [2001], provided that, when Medicaid recipient recovered amounts from liable third party, automatic assignment of recipient's right to recover from third party was considered to be statutory lien on amounts recovered); *State* v. *Peters*, supra, 287 Conn. 92, 96–100 (construing § 17b-94). We can perceive no reason, however, why the state can not comply with federal third-party liability requirements by enacting a subrogation statute that incorporates common-law subrogation principles, including the principle that an insurer may seek reimbursement from an insured for costs recovered from a third party for which the insurer already has paid. Indeed, there is no reason to believe that Congress contemplated that there would be any circumstances under which a Medicaid recipient who recovers from a liable third party for the cost of medical services for which the Medicaid program has paid should be entitled to keep that windfall. The plaintiffs in the present case do not dispute that § 17b-265 was intended to meet the state's obligations under federal law. See *Maher* v. *Freedom of Information Commission*, 192 Conn. 310, 317–18, 472 A.2d 321 (1984) ("[although] [s]tate participation in the Medicaid program is . . . entirely optional . . . a state must comply with the requirements of [the federal Medicaid statutes] once it elects to participate"). Thus, because the Appellate Court's interpretation was consistent both with common-law principles of subrogation and with federal Medicaid law mandating that participating states recover from liable third parties to the full extent of their liability, we conclude that that court correctly determined that § 17b-265 confers authority on Health Net, as the department's assignee, to seek reimbursement from the plaintiffs for medical costs that the plaintiffs recovered from the liable third parties.[7]

In support of their claim to the contrary, the plaintiffs contend that the fact that the legislature has limited the state's right to recovery under § 17b-94 in various ways, and has chosen not to impose these limitations on the right to subrogation conferred by § 17b-265, indicates that the legislature did not intend to allow the department or its designated assignee to seek reimbursement from a Medicaid recipient pursuant to § 17b-265, because the legislature could not have intended to give the assignee a greater right to reimbursement from Medicaid recipients than the state. We do not find this contention persuasive. As we have explained, in order to participate in the federal Medicaid program, the state must comply with all of the requirements of 42 U.S.C. § 1396a (a) (25) and 42 U.S.C. § 1396k (a) (1) (A), including the requirement that the state seek reimbursement for Medicaid assistance to the full extent of a third party's liability. It is highly questionable whether § 17b-

94—which is not specifically a Medicaid statute but applies to numerous state public assistance programs in addition to the Medicaid program—would comply with these federal provisions because it does not authorize the state to seek reimbursement of the full amount of third party liability in every case, but caps the state's recovery at 50 percent of the Medicaid recipient's proceeds less the expenses of the lawsuit.[8] Thus, far from supporting the plaintiffs' position, the fact that § 17b-94 limits the extent of the state's recovery supports the conclusion that § 17b-94 was *not* intended to be the sole or exclusive means by which the state can fulfill its obligation under federal law to seek reimbursement from a Medicaid recipient, and that the legislature intended that § 17b-265—which, unlike § 17b-94, *is* exclusively a Medicaid provision, and which places no limits on the extent of the state's right to recover medical costs for which a third party is liable—would authorize the department or its designated assignee to seek reimbursement from Medicaid recipients for medical costs that the recipients recover from liable third parties.[9] We further note that the purpose of limiting the state's lien rights under § 17b-94 was "to give an incentive to the beneficiary to prosecute his or her cause of action [against liable third parties], thus benefiting the beneficiary and, possibly, the state . . . ." *State* v. *Marks*, 239 Conn. 471, 479, 686 A.2d 969 (1996). It was important for the legislature to provide such an incentive because § 17b-94 does not authorize the state to bring actions directly against third parties who are liable to the beneficiaries of the enumerated state public assistance programs. In contrast, § 17b-265 authorizes the department to bring a claim directly against a third party who is liable to a Medicaid recipient for medical costs. Accordingly, there was no reason for the legislature to bar the department from seeking full reimbursement from a Medicaid recipient pursuant to § 17b-265 and to require it to proceed pursuant to § 17b-94.

We acknowledge that this interpretation of § 17b-265 tends to render § 17b-94 superfluous as applied to Medicaid recipients, because the state ordinarily will have no reason to seek reimbursement from a Medicaid recipient pursuant to § 17b-94 when the department or its designated assignee can seek full reimbursement of medical costs that a Medicaid recipient recovers from a liable third party pursuant to § 17b-265. As between an interpretation that renders § 17b-94 superfluous as applied to Medicaid recipients and an interpretation that would prevent the state from complying with its obligations under federal law, however, we conclude that the former is more reasonable.

In support of their position, the plaintiffs cite a number of cases that hold that an insurer is prohibited from seeking subrogation against its own insured. See, e.g., *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 269 n.10, 994 A.2d 174 (2010) (if tortfeasor, who was insured's

fiancé, had been added as insured to insurance policy, "the [insurer] would not have been able to bring an action against him, as he would be the [insurer's] own insured"), citing *Home Ins. Co.* v. *Pinski Bros., Inc.*, 160 Mont. 219, 226, 500 P.2d 945 (1972); *New Haven* v. *Ins. Co. of Pennsylvania*, United States District Court, Docket No. 3:10-CV-02047 (JCH) (D. Conn. March 8, 2012) ("[t]he well-established [antisubrogation] rule prevents an insurer from acquiring a subrogation right against its own insured"). As Health Net notes, however, those cases merely stand for the proposition that "no subrogation exists against the insured . . . *whose negligence caused the loss.*" (Emphasis added; internal quotation marks omitted.) *Home Ins. Co.* v. *Pinski Bros., Inc.*, supra, 226; see also id. ("it is axiomatic that [an insurance company] has no subrogation rights against *the negligence of its own insured*" [emphasis added; internal quotation marks omitted]); id. ("by definition, subrogation exists only with respect to rights of the insurer *against third persons to whom the insurer owes no duty*" [emphasis added]); J. Fischer, "The Presence of Insurance and the Legal Allocation of Risk," 2 Conn. Ins. L.J. 1, 5 (1996) ("What happens if the insured was the person who caused the loss? If the insured's loss engendering conduct violates a term of the insurance contract, the insurer has a policy defense. But if the insured loss occurs under circumstances that deny the insurer a policy defense, the insurer is generally barred from seeking reimbursement of monies paid."). In other words, when an insurer compensates the victim of an insured's negligence for his or her losses pursuant to the insurance policy, the insurer cannot then seek recovery against the insured, because doing so would deprive the insured of the very benefit for which he or she has contracted. It does not follow from this principle that, when the insurer has paid expenses on behalf of an insured who then recovers payment for those same expenses from a third party, the insurer is barred from seeking reimbursement from the insured. Allowing the insurer to seek recovery from the insured under these circumstances is in no way inequitable or inconsistent with the basic purpose of insurance, namely, to protect the insured from the risk of loss. See *State* v. *Peters*, supra, 287 Conn. 97 n.20 (when state recovers funds from Medicaid recipient, recipient "has already received the full benefit of that which [the state] now receives" [internal quotation marks omitted]). Accordingly, the cases on which the plaintiffs rely have no application to the present case.

The plaintiffs also claim that cases standing for the proposition that an insurer may seek reimbursement from its insured for money that the insured has recovered from the wrongdoer are inapposite because they involve equitable subrogation and this case involves the statutory right of subrogation created by § 17b-265. As we have indicated, however, in determining the scope

of the right created by § 17b-265, we consider common-law principles governing the same general subject matter. We can perceive no reason why the legislature would have intended that the right to subrogation under § 17b-265, unlike the right to subrogation under the common law, would exclude the department's right to reimbursement from Medicaid recipients, thereby providing a windfall to those recipients in violation of federal Medicaid law governing third-party liability in this context.[10] We also reject the plaintiffs' claim that the cases on which Health Net relies are inapplicable because they were decided before § 52-225c, the anti-subrogation statute, became effective in 1985. See Public Acts 1985, No. 85-574, § 3 (P.A. 85-574) (effective October 1, 1985).[11] Section 52-225c merely provides that an insurer may not seek reimbursement for amounts paid as a result of a claim for damages for personal injury or wrongful death "[u]nless otherwise provided by law . . . ." Nothing in the statute suggests that, when an insurer *is* authorized by statute to pursue a subrogation claim, the scope of the right to subrogation is any different from the scope of that right under the common law.

The plaintiffs further contend that it is inappropriate to rely on the equitable principles that underlie the doctrine of subrogation to determine the scope of § 17b-265 because nothing in the record supports the conclusion that it would be inequitable to prohibit Health Net from seeking reimbursement from the plaintiffs. Specifically, they claim that "the Appellate Court's equitable findings rest on the wholly unsupported factual assumption that [the] plaintiffs (and all similarly situated Medicaid [recipients]) will obtain a 'double recovery' unless they pay Health Net, out of any settlement proceeds recovered from third-party tortfeasors, the full amount that Health Net paid for medical expenses relating to [the plaintiffs'] underling injuries." In addition, the plaintiffs contend that the equities weigh in their favor because "Health Net's business practice is *knowingly* and *deliberately* to *decline* to exercise its statutory subrogation rights against third parties so that it can force [the] plaintiffs to bear its costs of collection . . . [and] use its insureds as its uncompensated collection agents." (Citations omitted; emphasis in original.)

The factual issue of whether these specific plaintiffs, or other similarly situated plaintiffs, will or will not receive a double recovery if Health Net is barred from seeking reimbursement from them has no bearing on the proper interpretation of § 17b-265, which is the sole issue that is before us in this appeal. The plaintiffs did not claim before the trial court or on appeal to the Appellate Court that, even if § 17b-265 authorizes Health Net to seek reimbursement from Medicaid recipients for medical costs that they recover from liable third parties, Health Net should not be allowed to seek reimbursement from the plaintiffs because they did not

recover medical costs from their respective tortfeasors.[12] With respect to the plaintiffs' claim that Health Net is unfairly using them as "uncompensated collection agents," they have cited no authority for the proposition that an insurer has no right to seek reimbursement from an insured for amounts that the insurer *could have* recovered directly from a liable third party. Moreover, a Medicaid recipient would have no reason to bring a claim against a liable third party *solely* for medical costs, as the recipient is automatically deemed to have assigned the right to recover such costs to the department or its assignee by operation of § 17b-265 (b). See *State* v. *Peters*, supra, 287 Conn. 97 n.20 ("[Medicaid] [r]ecipients are under no compulsion to undertake . . . a recovery [against a liable third party], and if they do so, it is with knowledge of the assignment [of the right to such recovery to the department or its designated assignee]. The existence of [the state's right to reimbursement] is simply a factor to be considered when a recipient determines whether it is economically feasible to pursue a tort recovery." [Internal quotation marks omitted.]); cf. *Mitchell* v. *Coney Island Site 4A-1 Houses, Inc.*, New York Supreme Court, Docket No. 48910/97 (N.Y. Sup. May 20 2002) ("[the] court is not persuaded by the [Medicaid recipient's] characterization that [the state's] recoupment [of medical costs] is akin to a free ride at the expense of the [Medicaid recipient]"). The plaintiffs have not explained why, if a Medicaid recipient decides to bring a claim for damages other than medical costs, it would be significantly more burdensome for the recipient to seek medical costs as well, and then to reimburse the department or its assignee, than it would be if the department or its assignee brought its own claim against the third party or intervened in the recipient's action against the liable third party. Indeed, the primary effect of requiring Health Net to bring its own claim against the third party would be to cause unnecessary litigation. See *Amica Mutual Ins. Co.* v. *Barton*, supra, 1 Conn. App. 574 (if insurers were barred from seeking reimbursement from insureds for amounts recovered from third parties, "[i]nsurers would rush to sue [liable third parties] in order to preserve their subrogation rights . . . causing unnecessary litigation").

Having concluded that the Appellate Court correctly determined that § 17b-265 authorizes Health Net to seek reimbursement from the plaintiffs and other similarly situated persons for amounts that they recover from liable third parties for medical costs, we need not dwell on the plaintiffs' argument that Health Net had no authority to impose a lien on their property pursuant to § 17b-94. We note, however, that Health Net concedes this point and never has claimed otherwise. To the extent that the plaintiffs contend that the right to bring a claim against a Medicaid recipient pursuant to § 17b-265 is the effective equivalent of a lien right and, there-

fore, that this application of the statute is inconsistent with and preempted by the antilien provision set forth in 42 U.S.C. § 1396p (a) (1) (2012),[13] we decline to address this contention because the plaintiffs raised it for the first time in their reply brief.[14] See, e.g., *Calcano* v. *Calcano*, 257 Conn. 230, 244, 777 A.2d 633 (2001) (claims cannot be raised for first time in reply brief). We note, however, that, even if this application of § 17b-265 is the effective equivalent of a lien—an issue on which we express no opinion—the United States Supreme Court has held that the provisions of 42 U.S.C. § 1396a (a) (25) and 42 U.S.C. § 1396k (a) (1) (A), which require Medicaid recipients to assign to the state any claims against liable third parties for medical costs, create an exception to the antilien provision of 42 U.S.C. § 1396p (a). *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 284.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 17b-265 provides in relevant part: "(a) In accordance with 42 [U.S.C. §] 1396k, the Department of Social Services shall be subrogated to any right of recovery or indemnification that an applicant or recipient of medical assistance or any legally liable relative of such applicant or recipient has against an insurer or other legally liable third party . . . that is, by statute, contract or agreement, legally responsible for payment of a claim for a health care item or service, for the cost of all health care items or services furnished to the applicant or recipient, including, but not limited to, hospitalization, pharmaceutical services, physician services, nursing services, behavioral health services, long-term care services and other medical services, not to exceed the amount expended by the department for such care and treatment of the applicant or recipient. . . .

"(b) An applicant or recipient or legally liable relative, by the act of the applicant's or recipient's receiving medical assistance, shall be deemed to have made a subrogation assignment and an assignment of claim for benefits to the department. The department shall inform an applicant of such assignments at the time of application. Any entitlements from a contractual agreement with an applicant or recipient, legally liable relative or a state or federal program for such medical services, not to exceed the amount expended by the department, shall be so assigned. Such entitlements shall be directly reimbursable to the department by third party payors. The Department of Social Services may assign its right to subrogation or its entitlement to benefits to a designee . . . . This subsection shall not be construed to affect the right of an applicant or recipient to maintain an independent cause of action against such third party tortfeasor. . . ."

Section 17b-265 has been amended several times since the underlying events in this case occurred. See Public Acts 2012, No. 12-119, § 5; Public Acts 2011, No. 11-61, § 126; Public Acts 2011, No. 11-44, § 84; Public Acts 2010, No. 10-179, § 78; Public Acts 2009, No. 09-8, § 5; Public Acts, Spec. Sess., June, 2007, No. 07-2, § 20. Because the parties do not contend that these amendments are relevant to this appeal, we refer to the current revision of the statute for convenience.

[2] "Following the [trial court's] granting of the motion for summary judgment in favor of [Health Net] on the [declaratory judgment] count of the complaint, the plaintiffs withdrew [the remaining] counts . . . of the complaint on September 16, 2010." *Rathbun* v. *Health Net of the Northeast, Inc.*, supra, 133 Conn. App. 206 n.2.

[3] General Statutes § 17b-94 (a) provides in relevant part: "In the case of causes of action of beneficiaries of aid under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program or state-administered general assistance program, subject to subsections (b) and (c) of section 17b-93 . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary . . . after payment of all expenses connected with the cause of action, whichever is less . . . ."

Although § 17b-94 (a) was amended in 2011; Public Acts 2011, No. 11-44, § 71; that amendment has no bearing on the merits of this appeal. We hereinafter refer to the current revision of the statute for convenience.

[4] In their brief to this court, the plaintiffs assert that "[t]he legal issue in the present case concerns the right of a private [managed care organization] (Health Net) to recover *its* cost of health benefits, which it has paid out to medical providers on behalf of a Medicaid beneficiary . . . under circumstances [in which] a third party is legally liable to pay . . . damages to the beneficiary in connection with the injuries giving rise to the medical expenses." (Emphasis in original.) The plaintiffs also indicate that the contract between Health Net and the department is "ambiguous" as to the scope of the right that was assigned to Health Net, thereby suggesting that the department may not have assigned all of its statutory rights to Health Net. The plaintiffs' legal analysis, however, focuses exclusively on the proper interpretation of § 17b-265, not on the language of the contract. To the extent that the plaintiffs assert that the scope of Health Net's subrogation rights is narrower than the scope of the rights conferred on the department by § 17b-265, any such claim has not been adequately briefed, and, therefore, we decline to address it.

[5] The plaintiffs contend that this public policy consideration has no application in the present case because "any recoveries [that] Health Net obtains from Medicaid recipients are not deposited in the public treasury but rather are kept by Health Net." As we have indicated, however, the scope of Health Net's rights under § 17b-265 is identical in scope to the department's rights. In other words, if the department has a right to reimbursement from Medicaid recipients who have recovered medical costs from liable third parties, Health Net also has that right, regardless of whether its exercise of the right actually results in a reduction in the cost of the Medicaid program to taxpayers. Consequently, this fact has no bearing on the proper construction of the statute.

[6] In *Peters*, the named defendant, James Peters, a Medicaid recipient, among other defendants, contended that, under § 17b-94, the state either could seek recovery directly from the liable third party or could place a lien on funds that he had recovered from the third party, subject to a reduction in the amount of reimbursement to compensate Peters for attorney's fees and costs. See *State* v. *Peters*, supra, 287 Conn. 86–87. Although the court in *Peters* was not construing § 17b-265, it stated in dictum that, "to obtain reimbursement when a third party is liable for a recipient's medical expenses that the state has paid, [*the department, on behalf of*] *the state may pursue those claims against the third party directly pursuant to the assignment and subrogation scheme* [*created by § 17b-265*] or, alternatively, indirectly by placing a lien on personal injury judgments or settlements obtained by a [M]edicaid recipient from a liable third party [pursuant to § 17b-94]." (Emphasis added.) Id., 92–93. We reject the plaintiffs' suggestion that this statement in *Peters* supports their claim in the present case. As we have indicated, it does not follow from the fact that the department may pursue claims against a liable third party directly pursuant to § 17b-265 that it may *not* pursue reimbursement from the Medicaid recipient. We further note that, although *Peters* involved the proper interpretation of § 17b-94, the court's reasoning and its analysis of federal Medicaid law governing third-party liability apply equally to § 17b-265.

[7] A number of other state courts have reached the same conclusion with respect to the analogous statutory scheme of the respective state. See, e.g., *Cricchio* v. *Pennisi*, 90 N.Y.2d 296, 307, 683 N.E.2d 301, 660 N.Y.S.2d 679 (1997) ("[b]ecause the injured Medicaid recipient has assigned its recovery rights to [the New York Department of Social Services (DSS)], and DSS is subrogated to the rights of the beneficiary [pursuant to state statute] . . . the settlement proceeds [recovered by the recipient] are resources of the third-party tortfeasor that are owed to DSS" [citations omitted]); see also *Roberts* v. *Total Health Care, Inc.*, 349 Md. 499, 513, 709 A.2d 142 (1998) (reaching same conclusion with respect to Maryland statute); *Hedgebeth* v. *Medford*, 74 N.J. 360, 365, 378 A.2d 225 (1997) (under New Jersey statute providing that state " 'shall be subrogated to the rights of the individual for whom medical assistance was made available,' " state may seek recovery against Medicaid recipient for amounts recovered from liable third party).

[8] For example, if a hypothetical Medicaid recipient recovered medical costs in an action against the recipient's health insurer for the cost of medical care for which the Medicaid program already has paid, under § 17b-94, the state would be able to recover only 50 percent of "the proceeds received by [the recipient] . . . after payment of all expenses connected with the

cause of action . . . ." General Statutes § 17b-94 (a). In addition, it is questionable whether § 17b-94 is in compliance with federal Medicaid law because it does not limit the state's right to reimbursement to amounts recovered by a Medicaid recipient for medical costs but allows the state to seek reimbursement for *any* damages recovered by a Medicaid recipient in an action against a third party. See *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 284–85 (under 42 U.S.C. § 1396a [a] [25] and 42 U.S.C. § 1396k [a] [1] [A], state's right to reimbursement is limited to liable third party's payments to recipient for medical care). In contrast, § 17b-265 (a) provides that the department may recover only from a liable third party who is "legally responsible for payment of a [recipient's] claim for a health care item or service" but does not otherwise limit the extent of the department's right to reimbursement of medical costs.

To be sure, we indicated in *State* v. *Peters*, supra, 287 Conn. 82, that § 17b-94 was intended to comply with federal Medicaid law, and, therefore, the meaning of the statute was informed by the relevant federal laws. See id., 91–95 (considering whether federal Medicaid law required state to pursue liable third party directly for purposes of determining whether § 17b-94 embodied that requirement). We now recognize, however, that, because, unlike § 17b-265, § 17b-94 was not intended to embody federal Medicaid law, the scope and meaning of § 17b-94 should not be determined primarily by reference to that law. Nevertheless, to the extent that § 17b-94 applies to Medicaid recipients, any such application must be *consistent* with federal Medicaid law, that is, its application may be preempted by federal law to the extent that it deprives a Medicaid recipient of a right to which he or she is entitled under federal law. See, e.g., *Persico* v. *Maher*, 191 Conn. 384, 393, 465 A.2d 308 (1983) (state law that is inconsistent with federal Medicaid requirements is void); see also *Martin ex rel. Hoff* v. *Rochester*, 642 N.W.2d 1, 18 (Minn. 2002) (state statute allowing state to place lien on amounts recovered by Medicaid recipient from liable third party for medical costs was preempted by federal Medicaid law to extent that state statute authorized state to recover more from recipient than he or she recovered from liable third party), cert. denied sub nom. *Minnesota* v. *Martin ex rel. Hoff*, 539 U.S. 957, 123 S. Ct. 2668, 156 L. Ed. 2d 655 (2003). Accordingly, although the court in *Peters* properly could have considered federal Medicaid law to determine whether the state's application of § 17b-94 to the defendant in that case was consistent with that law, to the extent that the court considered federal Medicaid law to determine the scope and meaning of § 17b-94, it was improvident to do so. We note, however, that our determination in *Peters* that the state is entitled to seek reimbursement from a Medicaid recipient pursuant to § 17b-94 and that the state is not required to reduce the amount of reimbursement pro rata to compensate the recipient for attorney's fees and costs is fully supported by the plain language of that statute. See *State* v. *Peters*, supra, 97.

[9] Of course, the state *may* seek reimbursement from a Medicaid recipient pursuant to § 17b-94 if it does so in a manner that is consistent with federal Medicaid law. We conclude only that the § 17b-94 does not provide the exclusive means to pursue recovery from a Medicaid recipient.

[10] The plaintiffs contend that, even if an insurer can seek reimbursement from an insured under the common law, that common-law principle sheds no light on the scope of the right created by § 17b-265 because the state had no right under the common law to recover public assistance payments from a beneficiary of such assistance. Even if we were to assume that the state had no such right under the common law, federal Medicaid law, with which § 17b-265 was intended to comply, not only permits but clearly *requires* the state to recover from Medicaid recipients amounts that they have recovered from liable third parties for medical costs. Accordingly, it is more reasonable to conclude that the legislature intended that § 17b-265 would incorporate common-law subrogation principles than to conclude that it intended the statute to incorporate, to the maximum extent possible, the common-law principle that the state has no claim against recipients of state and federal aid.

[11] Although P.A. 85-574, § 3, was effective on October 1, 1985, a subsequent amendment to P.A. 85-574, § 3, in 1986; see Public Acts 1986, No. 86-338, § 6; rendered the antisubrogation statute applicable to insurance contracts issued, reissued or renewed on or after October 1, 1986. See General Statutes (Rev. to 1987) § 52-225c.

[12] The plaintiffs contend that this issue was raised at trial and is reviewable by this court. They note that, during argument on the parties' respective motions for summary judgment, the plaintiffs' attorney stated: "I just want

to put on the record here that there's absolutely no evidence that either of the two plaintiffs . . . actually recovered medical benefits. And, in fact, if . . . [a] jury [in the actions against the liable third parties] had awarded medical expenses as part of the verdict, [the] trial judge would probably have reduced the [verdict] by the amount of this money because there was no subrogation actually brought by Health Net. . . . [T]he only right to collect this money would be Health Net's right. . . . [Health Net has] an assignment from the state to subrogate. If [it does not] exercise that right, how can the plaintiff[s] actually recover this money.

"So there's no evidence here that these settlements incorporated medical expenses at all. I just don't want that to be assumed somehow that they collected medical expenses. There's no evidence to that effect, and I would argue [that] there would [be] absolutely no legal entitlement for any of these plaintiffs to have claimed medical expenses that were paid by Health Net."

Thereafter, the trial court ordered the parties to submit briefs on the following question: "How, if at all, does the [United States] Supreme [Court's decision] in [*Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 268] relate to the facts presented here insofar as the portion of any settlements that represent Medicaid expenses are not separately set forth in such settlements?" In *Ahlborn*, the United States Supreme Court held that the claim of a state agency administering a Medicaid program to the proceeds of a Medicaid recipient's settlement with a liable third party is limited to the amount that the recipient recovered for the costs of medical care. See *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 284. In response to the trial court's order, Health Net submitted a brief in which it contended that the plaintiffs had alleged no facts that would support the finding of an *Ahlborn* violation. The plaintiffs submitted a brief in which they contended that *Ahlborn* "should not impact the particular issues raised in the plaintiffs' complaint. In particular, the plaintiffs . . . are limiting their challenge to the right of private parties to assert the state's § 17b-94 statutory lien rights." The plaintiffs further contended that "[t]he holding in *Ahlborn* may represent another rationale as to why [Health Net] should not recover its 'lien,' but this [issue] is not currently before the court." The plaintiffs did not ask the trial court to address the *Ahlborn* issue if it concluded that Health Net was entitled to seek reimbursement from them, they did not include any facts relating to this issue in the joint statement of stipulated facts, they did not submit any affidavits or other documents with their brief indicating that they had not recovered medical costs from the respective liable third parties, and they made no such claim in their complaint. The trial court ultimately determined, as a matter of law, that, under *Ahlborn*, Health Net's right to reimbursement from the plaintiffs was "limited to the amount of Medicaid funds paid and identified as part of any settlement." The court made no factual findings, however, as to whether the amounts that Health Net had recovered from Rathbun and sought to recover from Tanequa Brayboy exceeded the amounts that the plaintiffs had recovered for medical costs. The plaintiffs made no claim in their appeal to the Appellate Court that the trial court improperly failed to make factual findings on this issue or that the case should be remanded to the trial court for resolution of the issue. We therefore reject the plaintiffs' claim that we may and should address this fact bound issue in the present appeal.

We also reject the plaintiffs' argument that, as a matter of law, they *could not* have recovered medical costs from the liable third parties because they had assigned their rights to such recovery to Health Net. The plaintiffs have cited no authority for the proposition that an insured is categorically prohibited from recovering amounts paid by the insurer from the liable third party. Indeed, the very statute at issue in the present case expressly provides that it "shall not be construed to affect the right of an applicant or recipient to maintain an independent cause of action against [a] third party tortfeasor." General Statutes § 17b-265 (b); see also *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 287–88 (Medicaid recipient who settled claim against tortfeasor did not violate duty to cooperate with state in pursuing liable third party when state agency had intervened in action against tortfeasor and asked to be apprised of proceedings but did not ask to be involved in settlement negotiations); *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 280 n.9 (parties and court assumed "that a [s]tate can fulfill its obligations under the federal third-party liability provisions by requiring an 'assignment' of part of, or placing a lien on, the settlement that *a Medicaid recipient procures on her own*" [emphasis added]); *State* v. *Peters*, supra, 287 Conn. 97 n.20 (existence of assignment to department "is simply a factor to be considered when a recipient determines whether it is

economically feasible to pursue a tort recovery" [internal quotation marks omitted]); *Shawnee Fire Ins. Co.* v. *Cosgrove*, 86 Kan. 374, 377–78, 121 P. 488 (1921) (insurer has right to enjoin insured from settling case against liable third party for less than amount paid by insurer, but insurer can acquiesce in litigation and settlement subject to insurer's right to reimbursement).

Finally, we emphasize that Health Net has not appealed from the trial court's ruling that it is entitled to reimbursement only for the amounts that the plaintiffs recovered from the liable third parties *for medical costs*, and nothing in this opinion prevents the plaintiffs or other similarly situated persons from claiming in future proceedings concerning Health Net's reimbursement claims that the amounts sought exceed the amounts that were recovered from the liable third parties for medical costs. Indeed, it is reasonable to conclude that the plaintiffs' attorney was merely attempting to preserve the right to raise this issue in future proceedings when he argued to the trial court that there was no evidence that the plaintiffs had recovered such costs.

[13] Title 42 of the 2012 edition of the United States Code, § 1396p (a) (1), provides in relevant part: "No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan . . . ."

There are certain exceptions to the general rule that are not relevant for purposes of this appeal. See 42 U.S.C. § 1396p (a) (1) (A) and (B) (2012).

[14] The plaintiffs contend in their brief that, as a matter of statutory interpretation, § 17b-265 authorizes Health Net to seek reimbursement exclusively from a liable third party, and the only other statute authorizing a lien on funds that are recovered by a Medicaid recipient from a liable third party, § 17b-94, does not vest Health Net with such authority. The plaintiffs also claim that federal law prohibits Health Net from seeking reimbursement from them in an amount greater than they recovered for medical costs from the liable third parties. They do not claim, however, that, if § 17b-265 authorizes Health Net to seek reimbursement from them, it effectively authorizes the imposition of a lien and, therefore, is preempted by the antilien provision of 42 U.S.C. § 1396p (a) (1).